**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 93-2757
Summary Calendar
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,


VERSUS

GEORGE CAPUTO,
RENE MALDONADO, and
JAMES "SANCHEZ" BURNSIDE,

Defendants-Appellants.



_____

Appeal from the United States District Court
for the Southern District of Texas
(CR-H-91-59-24)
_____
April 16, 1996


Before KING, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]


George Caputo, Rene Maldonado, and James Burnside appeal their convictions and sentences on various federal offenses. We affirm as to Caputo and Maldonado and affirm in part and reverse in part as to Burnside.

_____

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

## I.  Overview

A 110-count third superseding indictment charges these and twenty-three other defendants with offenses arising from their involvement with a major Houston-based marihuana ring headed by Desi Guerra.  The other defendants pleaded guilty, and several testified at the appellants' trial.  The district court acquitted Caputo of one count of conspiracy to travel in interstate commerce to distribute marihuana, and the jury found Burnside not guilty of six counts of money laundering and convicted the appellants of the remaining charges.

The district court sentenced Caputo and Maldonado to concurrent terms of 168 months, followed by five-year concurrent terms of supervised release.  The court sentenced Burnside to concurrent terms totaling 151 months, followed by two-year concurrent terms of supervised release.  The defendants appeal their convictions and sentences; the government filed cross-appeals from the sentences but subsequently dismissed those cross-appeals.


## II.  Sufficiency of the Evidence as to Caputo.

The jury convicted Caputo of conspiracy to possess with intent to distribute more than 1000 kilograms of marihuana (count 1); aiding and abetting the possession with intent to distribute more than 50 kilograms of a controlled substance (count 4); aiding and abetting the possession with intent to distribute more than 100 kilograms of marihuana (count 102); and three violations of the Travel Act (counts 5, 6, and 103).  Caputo argues that the evidence

2

is insufficient.

Caputo moved for judgment of acquittal at the end of the government's case-in-chief and again at the close of the evidence. Therefore, the standard for evaluating sufficiency is whether, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the essential elements of the offenses beyond a reasonable doubt. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc), *aff'd*, 462 U.S. 356 (1983). We view direct and circumstantial evidence adduced at trial, as well as all inferences reasonably drawn from it, in the light most favorable to the verdict. *United States v. Sanchez*, 961 F.2d 1169, 1173 (5th Cir.), *cert. denied*, 506 U.S. 918 (1992). We look to whether the trier of fact made a rational decision, rather than to whether it correctly determined the defendant's guilt or innocence. *United States v. Jaramillo*, 42 F.3d 920, 923 (5th Cir.), *cert. denied*, 115 S. Ct. 2014 (1995). We will reverse a conviction, however, "if the evidence construed in favor of the verdict gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged." *Id.* (internal quotation and citations omitted).

### A. Controlled Substance Offenses.

A conviction for conspiracy requires proof of "an agreement between two or more persons to violate the narcotics laws, . . . [and] that each alleged conspirator knew of the conspiracy and intended to join it, and . . . participate[d] in the conspiracy."

*United States v. Puig-Infante*, 19 F.3d 929, 936 (5th Cir.), *cert. denied*, 115 S. Ct. 180 (1994); *United States v. Sanchez-Sotelo*, 8 F.2d 202, 208 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 1410 (1994). "An agreement may be inferred from concert of action, participation from a collocation of circumstances, and knowledge from surrounding circumstances." *Sanchez*, 961 F.2d at 1174 (internal quotation and citation omitted). Once the government establishes an illegal conspiracy, "only slight evidence" is needed to connect an individual defendant to the conspiracy." *United States v. Thomas*, 12 F.3d 1350, 1359 (5th Cir.) (internal quotation and citation omitted), *cert. denied*, 114 S. Ct. 1861, 2119 (1994).

A conviction for possession of a controlled substance with intent to distribute requires proof that the defendant knowingly possessed the contraband and intended to distribute it. The possession of a larger quantity of drugs than would ordinarily be used for personal consumption can support a finding of intent to distribute. *United States v. Pineda-Ortuno*, 952 F.2d 98, 102 (5th Cir.), *cert. denied*, 504 U.S. 928 (1992). Possession of a controlled substance may be either actual or constructive, may be joint among several defendants, and may be proved by either direct or circumstantial evidence. *United States v. Rodriguez*, 15 F.3d 408, 411 n.2 (5th Cir. 1994).

A conviction for aiding and abetting requires proof that the defendant associated with and participated in a criminal venture and sought to make it succeed. *Jaramillo*, 42 F.3d at 923; *United States v. Mergerson*, 4 F.3d 337, 342 (5th Cir. 1993), *cert. denied*,

4

114 S. Ct. 1310 (1994). "Mere presence and association" are not enough to sustain a conviction for aiding and abetting. *Jaramillo*, 42 F.3d at 923.

Count 1 alleged that between January 1986 and August 1991, Caputo and others engaged in a conspiracy to possess with intent to distribute more than 1000 kilograms of marihuana. Count 4 alleged that on or about April 3, 1987, Caputo and others aided and abetted the possession with intent to distribute more than fifty kilograms of a Schedule I controlled substance. Count 102 alleged that on or about December 15, 1989, Caputo and others aided and abetted the possession with intent to distribute more than 100 kilograms of marihuana.

Coconspirator Arnulfo Hernandez testified, pursuant to a plea agreement, that from approximately mid-1985 until 1990, he arranged for numerous loads of marihuana to be hauled from Houston to Chicago for delivery to Caputo and other customers in Illinois. Guerra "fronted" the marihuana to Hernandez's customers. Hernandez recruited drivers to transport the marihuana to Illinois, where Hernandez would meet them, take possession of the vehicle, deliver the marihuana to the customer, and return the load vehicle to the driver to take back to Texas. The marihuana was hidden in fake propane tanks attached to pickup trucks or false compartments under the beds of pickup trucks; sometimes it was concealed in horse trailers. Approximately 600 pounds of marihuana could be shipped in a horse trailer.

Hernandez testified that Caputo lived on the second floor of

5

a two-story house that had an adjoining two-car garage. Caputo's apartment could be entered via an outside staircase. Hernandez typically would park the loaded vehicle in the garage, close the garage door, and unload the marihuana. He would then carry the marihuana up the outside staircase to Caputo's apartment and store it in Caputo's bedroom. It usually took Caputo three weeks to a month to sell a load of marihuana.

Hernandez was stopped by state police in Arkansas in April 1987. He stated that "[j]ust before" he was stopped, he had delivered two 200-pound loads of marihuana to Caputo. Hernandez further testified that in "late '89, very early '90," he shipped two 600-pound loads of marihuana in horse trailers for delivery to Caputo and a man named Gilbert Torres. The second 600-pound load likely was shipped in March 1990. One shipment was unloaded at Caputo's house and the other in Hammond, Indiana, at a house belonging to Hernandez's brother-in-law, Robert Martinez. Caputo received approximately eighty percent of the marihuana from these two loads. Hernandez conceded that he had "a bad memory" for dates, but he averred that he could always remember the amounts of marihuana involved in various transactions, because it was important that he know exactly how much money he was responsible for returning to Guerra.

When Caputo was arrested, his wallet contained a card bearing Hernandez's nickname and three telephone numbers; the same numbers were discovered on Desi Guerra's address directory in Houston. The government introduced motel and telephone records indicating that

6

members of the Guerra organization had been in the Chicago area near the times when Hernandez testified that drug transactions had occurred.

The uncorroborated testimony of an accomplice or coconspirator will support a conviction if the testimony is not incredible or insubstantial on its face. *United States v. Singer*, 970 F.2d 1414, 1419 (5th Cir. 1992). The rule applies even if the accomplice or coconspirator testified pursuant to a plea agreement. *United States v. Osum*, 943 F.2d 1394, 1405 (5th Cir. 1991).

Caputo argues that Hernandez's testimony is incredible as a matter of law because his statements concerning dates were inconsistent and because he stated on direct examination that he delivered marihuana to Caputo eight times, but on cross-examination he said ten. Caputo also suggests that Hernandez's testimony concerning how the marihuana was unloaded at Caputo's house is not believable and that it was incredible for the jury to find that Caputo distributed marihuana, because Hernandez testified that Caputo was a recluse.

"[T]estimony generally should not be declared incredible as a matter of law unless it asserts facts that the witness physically could not have observed or events that could not have occurred under the laws of nature." *Osum*, 943 F.2d at 1405. The fact that Hernandez's testimony contained inconsistencies does not make it insubstantial or incredible as a matter of law. *See United States v. Greenwood*, 974 F.2d 1449, 1458 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 2354 (1993).

The jury is solely responsible for determining the weight and credibility of the evidence. *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992), *cert. denied*, 507 U.S. 943 (1993). We will not substitute our own credibility determination for that of the jury. *Id.* The foregoing evidence was sufficient for the jury to have found Caputo guilty of the controlled substance violations. *See Puig-Infante*, 19 F.3d at 936; *Pineda-Ortuno*, 952 F.2d at 102; *see also United States v. Quiroz-Hernandez*, 48 F.3d 858, 866-68 (5th Cir. 1995).

### B.   Travel Act Violations.

A conviction for violating the Travel Act requires, *inter alia*, proof that the defendant traveled in interstate commerce or used facilities of interstate commerce with the specific intent to engage in, or facilitate activities involving, narcotics or controlled substances in furtherance of a criminal business enterprise. *United States v. Roberson*, 6 F.3d 1088, 1094 (5th Cir. 1993), *cert. denied*, 114 S. Ct. 1230, 1322, 1383 (1994).

Counts 5 and 6 alleged that Caputo and others had aided and abetted other persons to engage in interstate travel to promote a business enterprise involving the distribution of marihuana. Caputo argues that his convictions for counts 5 and 6 should be reversed because the jury's guilty verdict is based solely upon Hernandez's testimony, which is unworthy of belief. As discussed above, it was not error for the jury to rely upon Hernandez's testimony. *See Osum*, 943 F.2d at 1405.

8

Count 103 charged that Caputo aided and abetted travel in interstate commerce to distribute marihuana and "use[d] and cause[d] to be used facilities in interstate commerce, including the use of the telephone with the intent to" facilitate a business enterprise involving the distribution of marihuana. The offense allegedly occurred on or about December 15, 1989.

Caputo argues that this conviction must be reversed because it is based solely upon evidence that telephone calls were made from Caputo's house to a telephone belonging to Hernandez's girlfriend in February 1990 and on March 26, 1990. The government responds that the jury properly convicted Caputo on count 103 because the evidence supported a finding that Caputo received a load of marihuana in December 1989; the driver who brought the load to Chicago stayed at the Fairfield Inn from December 16, 1989, to December 19, 1989; and, during that period, the driver received telephone calls from the person responsible for routing drivers for the Guerra organization.

A rational jury could have concluded that, on or about December 15, 1989, Caputo aided and abetted others to travel in interstate commerce and caused the use of a telephone to facilitate the distribution of marihuana. *Jaramillo*, 42 F.3d at 923. The evidence is sufficient.

*III.  Denial of a New Trial.*

Caputo suggests that the district court abused its discretion by refusing to order a new trial based upon newly discovered evidence.  At his sentencing hearing, Caputo told the district court that he had met and talked with Guerra the week before. Caputo stated that Guerra was willing to testify that Hernandez was selling marihuana to Hernandez's brother-in-law in Hammond, Indiana.

Caputo argued that this was new evidence that undercut Hernandez's testimony that he sold marihuana to Caputo.  The district court explained that this evidence indicated only that it was possible that both Caputo and Hernandez's brother-in-law were guilty.  After he was sentenced, Caputo wrote a letter to the court that indicated that Caputo thought that the court had not given Caputo an adequate opportunity to speak at his sentencing hearing. The court held a post-sentencing hearing to allow Caputo to explain his position.

To obtain a new trial based upon newly discovered evidence, a defendant must establish that "(1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence introduced at a new trial would probably produce an acquittal." *Jaramillo*, 42 F.3d at 924; FED. R. CRIM. P. 33.  A defendant is not entitled to a new trial unless he satisfies all five prongs.  *Jaramillo*, 42 F.3d at

10

924-25. We review for abuse of discretion the decision that a defendant is not entitled to a new trial based upon newly discovered evidence. *Id.* at 924.

Caputo has failed to show abuse of discretion. Guerra's alleged "newly-discovered evidence" is consistent with Hernandez's trial testimony that he shipped marihuana to his brother-in-law in Hammond. The evidence would be unlikely to result in acquittal at a new trial. As the district court explained to Caputo: (1) The fact that Hernandez's brother-in-law received marihuana from Guerra's organization does not establish that the organization did not ship marihuana to Caputo, and (2) the fact that Guerra allegedly did not know Caputo during the existence of the conspiracy does not mean that Caputo was not a member of his organization.

## IV. Caputo's Sentence.

Caputo argues that his sentence should be vacated. He argues that the district court did not make specific factual findings concerning (1) the amount of drugs attributable to Caputo and (2) his role in the offense.

## A. Drug Quantity.

The probation officer determined that Caputo's offense level was 32 because he had been convicted of conspiracy to possess more than 1000 kilograms of marihuana.[1] Caputo objected that the

---

[1] Caputo was sentenced in September 1993; therefore, the 1992 version of the Sentencing Guidelines applies.

offense conduct described in the presentence report ("PSR") was inconsistent and did not support a finding that his relevant conduct involved more than 1000 kilograms. The district court overruled the objection because, based upon the evidence at trial, the jury found Caputo guilty of conspiring to distribute more than 1000 kilograms of marihuana.

We review the determination of relevant quantity for clear error. Factual findings concerning relevant conduct for sentencing purposes are not clearly erroneous if they are "plausible in light of the record read as a whole." *Puig-Infante*, 19 F.3d at 942. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that . . . it would have weighed the evidence differently." *United States v. Bermea*, 30 F.3d 1539, 1575 (5th Cir. 1994), *cert. denied*, 115 S. Ct. 1113, and *cert. denied*, 115 S. Ct. 1825 (1995). Here, the determination of the quantity of drugs is not clearly erroneous because it is plausible, in light of the record as a whole, that Caputo's relevant conduct included over 1000 kilograms of marihuana.

### B. Role in the Offense.

The probation officer recommended that Caputo be given a two-level increase in offense level because of his role in the offense. Caputo objected that there was no evidence that he was a manager and that he should be given a four-level decrease in offense level because he was only a minimal participant. The district court

overruled the objection, finding that the evidence showed that Caputo was the "mid-level distributor" for the Guerra organization in Chicago and the Midwest. This determination is plausible in light of the record as a whole, so we affirm. *See Bermea*, 30 F.3d at 1575.

## *IV. Evidentiary Rulings.*

Maldonado argues that the district court erred by overruling his hearsay objections to testimony concerning out-of-court statements made by Dario Maldonado ("Dario"), Maldonado's brother and codefendant. Dario pleaded guilty but did not testify at Maldonado's trial.

The government alleged that Maldonado and Dario transported marihuana for the Guerra organization. Dario's ex-wife, Rhonda Dobbs, testified that Dario bought a black pickup truck with funds furnished by Guerra and installed a trailer hitch on the truck. Rene and Dario used the truck to haul Dario's Camaro to Atlanta. Dario told Rhonda that they were going to Atlanta to race the car. Rhonda testified that she objected, because Dario had never raced the Camaro before, and she did not believe his explanation for the trip. She stated that Dario responded that it would "look better" if they took the Camaro.

Maldonado made a hearsay objection when the government asked Rhonda who had told Dario that it would "look better" to take the Camaro. The government argued that the evidence was admissible as a co-conspirator's statement in furtherance of the conspiracy. The

13

district court overruled the objection, and Rhonda identified Maldonado as the person who advised Dario that it would look better to take the Camaro to Atlanta.

Rhonda testified that, after Dario and Maldonado returned from Atlanta, Dario explained the reason for the trip. The district court overruled Maldonado's hearsay objection to Rhonda's evidence concerning the purpose of the trip. Rhonda testified that Dario told her that he and Rene had used the Camaro's trailer to "pull[] a load of marihuana to Atlanta."

We review rulings on admission of evidence for abuse of discretion. *United States v. Triplett*, 922 F.2d 1174, 1180 (5th Cir.), *cert. denied*, 500 U.S. 945 (1991). In direct criminal appeals, review of evidentiary rulings is "necessarily heightened." *United States v. Hays*, 872 F.2d 582, 587 (5th Cir. 1989). Nevertheless, a conviction will not be reversed because of the erroneous admission of hearsay evidence unless the inadmissible evidence had a substantial impact on the jury's verdict. *United States v. El-Zoubi*, 993 F.2d 442, 446 (5th Cir. 1993).

"[A] statement made by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. FED. R. EVID. 801(d)(2)(E); *United States v. McConnell*, 988 F.2d 530, 533 (5th Cir. 1993). "A statement is made in furtherance of the conspiracy if it advances the ultimate objectives of the conspiracy." *United States v. Snyder*, 930 F.2d 1090, 1095 (5th Cir.), *cert. denied*, 502 U.S. 942 (1991).

Maldonado concedes that the statements attributed to Dario

14

were coconspirator statements made during the course of the conspiracy. He argues, however, that the admission of the statements was error because the statements were not made in furtherance of the conspiracy.

The district court did not abuse its discretion by determining that Dario's statement that Rene thought it would "look better" if he and Dario took the Camaro to Atlanta was made in furtherance of the conspiracy. The purpose of the statement was to overcome Rhonda's objection to Dario's plan to use the trailer to tow the Camaro to Atlanta.

The admission of Dario's statement that he and Maldonado pulled a load of marihuana to Atlanta is affirmed as a statement in furtherance of the conspiracy. Rhonda admitted that she had known Dario was "dealing marihuana" and that she was testifying pursuant to a promise of immunity. Thus, we can consider Rhonda to be an unindicted coconspirator, and hence the statement can be deemed to be in furtherance of the conspiracy, because it "inform[] [her] of the progress of the conspiracy." *See United States v. Flores*, 63 F.3d 1342, 1377 (5th Cir. 1995).

## *VI.  Maldonado's Sentence.*

Maldonado argues that the district court erred at sentencing by failing to make adequate factual findings concerning the relevant quantity of marihuana. Maldonado suggests that the district court violated FED. R. CRIM. P. 32 because it did not resolve his objection to the PSR with a specific factual finding as

15

to the quantity of drugs for which Maldonado was responsible.

The probation officer determined that Maldonado's base offense level was 34 based upon a "conservative estimate" that he had facilitated the distribution of 4,545 kilograms of marihuana. Maldonado noted the probation officer's report that, between December 1990 and March 1991, Maldonado and his brother delivered "most of" 6000 pounds of marihuana that the Guerra organization shipped to defendant Jack Novoselsky "via U-Haul trailers and Wells Cargo trailers." Maldonado objected that he denied "ever transporting marihuana in U-Haul trailers." The district court overruled the objection on the ground that the type of trailer used to carry the marihuana was irrelevant.

Maldonado asked to be sentenced at offense level 30. He posited that his base offense level was 32 because the trial evidence supported a finding of between 1000 and 3000 kilograms of marihuana, and he suggested that his offense level should be reduced by two because he was a minor participant. At the sentencing hearing, the district court questioned the nature of Maldonado's objection to the base offense level. Counsel explained that it was "a general objection" to the quantity "attributed . . . by the Presentence Report."

The court overruled the objection, stating that it was "clear by the level of participation of this defendant, reasonably probable that he was aware of the scope of the enterprise of more than 3,000 kilos." The district court adopted the PSR "with the

16

addition of Mr. Maldonado's explanations . . . ."[2]

"The defendant bears the burden of demonstrating that information the district court relied on in sentencing is materially untrue." *United Sates v. Vela*, 927 F.2d 197, 201 (5th Cir.), *cert. denied*, 502 U.S. 875 (1991) (internal quotations and citation omitted). The court must make specific findings to resolve contested factual issues relevant to sentencing if it intends to use those facts as a basis for its sentence. *United States v. Sherbak*, 950 F.2d 1095, 1098 (5th Cir. 1992); *see* FED. R. CRIM. P. 32(c)(3)(D). If, however, a defendant objects to the PSR but does not present rebuttal evidence to refute the facts, the district court may adopt the facts in the PSR without further inquiry. *Sherbak*, 950 F.2d at 1099-1100.

Maldonado presented no rebuttal evidence to support his objection to the quantity of drugs attributed to him by the PSR; therefore, the district court did not clearly err by adopting the PSR's factual findings as to the quantity of drugs. *See id.* Maldonado's argument that the court failed to make a clear record concerning relevant quantity of drugs is irrelevant. The court found that the record showed that Maldonado was responsible for more than 3000 kilograms of marihuana. Maldonado's base offense level is 34, regardless of whether he was responsible for 3000 or 4545 kilograms of marihuana. *See* U.S.S.G. § 2D1.1(c)(5).

---

[2] The explanations are not relevant to the quantity of drugs involved in the offense.

*VII.  Sufficiency of the Indictment as to Burnside.*

Burnside alleges that the district court lacked jurisdiction to convict him of the transaction structuring offenses alleged in counts 77, 79, 81, 87, and 88 because the indictment omitted an essential element of the offense.  Burnside points out that each of these counts failed to allege that the structured transaction involved a "domestic financial institution."  He does not suggest that the indictment failed to allege any other element of the offense.

Counts 77, 79, 81, 87, and 88 charged Burnside with structuring currency transactions to evade currency reporting requirements.  A defendant is subject to criminal penalties if he "structure[s] or assist[s] in structuring, or attempt[s] to structure or assist in structuring, any transaction with one or more domestic financial institutions" for the purpose of evading the reporting requirements for cash transactions.  *See* 31 U.S.C. § 5324(3)(a).

Each of the challenged counts alleged that the structuring offense took place "in the Southern District of Texas and else- where" and specified the financial institution or institutions involved in the prohibited transaction, the date of the transac- tion, and the amount of cash involved.  Some of the financial institutions have titles which strongly suggest that they are "domestic" financial institutions, e.g., First City, Texas$$Northeast Branch, 1st National Bank, NCNB$$Texas, and Lone Star Bank.

Burnside did not object to the sufficiency of the indictment in the district court. Therefore, the court will "read the indictment liberally to be sufficient, unless it is so defective that by any reasonable construction, it fails to charge an offense for which the defendant is convicted." *United States v. Alford*, 999 F.2d 818, 823 (5th Cir. 1993) (quotation and citation omitted). "An indictment is sufficient if (1) it contains the elements of the offense charged, (2) it fairly informs the defendant of the charge he must meet, and (3) there is no risk of future prosecutions for the same offense." *Id.* The court's review of the sufficiency of the indictment is *de novo*, but the court will not reverse a conviction for "minor deficiencies in the indictment that cause no prejudice." *United States v. Gaytan*, No. 95-50055, 1996 WL 26787, at *1 (5th Cir. Jan. 23, 1996).

Burnside does not suggest that the indictment did not fairly inform him of the charges against him or that he is in jeopardy of future prosecution for the offenses alleged therein. He concedes that the district court instructed the jury that a conviction required proof that the offense involved a "domestic financial institution," and he does not suggest that any of the named institutions was not a "domestic" institution.

Counts 77, 79, 81, and 87 state that the charged conduct occurred "in the Southern District of Texas and elsewhere," identify the relevant financial institutions, and refer to what was then § 5324(3) (which details the elements required for a violation, including the requirement that the transaction involve a

19

"domestic financial institution."). Under similar circumstances, we have determined that an indictment adequately set forth the elements of the alleged offenses. *See United States v. Devoll*, 39 F.3d 575, 578-79 (5th Cir. 1994), *cert. denied*, 115 S. Ct. 1701 (1995); *see also United States v. Green*, 964 F.2d 365, 373-75 (5th Cir. 1992), *cert. denied*, 506 U.S. 1055 (1993).

Count 88 alleges that Burnside engaged in transactions for the purposes of evading the currency reporting requirements of 31 U.S.C. § 5313(1).[3] Unlike the other challenged counts, however, count 8 fails to allege that Burnside violated § 5324.

An indictment must cite the "statute, rule, regulation or other provision of law" that the defendant is alleged to have violated; FED. R. CRIM. P. 7(c)(1). We are unaware of a case in which the court has affirmed a challenge to an indictment under similar circumstances. The only authority tending to support an affirmance is *United States v. Ellender*, 947 F.2d 748, 755-56 (5th Cir. 1991). There, we found that allegations that the offense occurred "'commencing in or about the month of July, 1982, and continuing through the month of August, 1984' . . . 'in the Western District of Louisiana, and elsewhere'" sufficiently apprised the defendant of the charged conduct to allow him to prepare a defense. *Id.*

*Ellender* is distinguishable, however, as the defendant argued, not that the indictment failed to allege the elements of the offense, but that it was too vague to allow him to defend the

---

[3] Section 5313 does not provide criminal penalties.

charges.  *See id.*  Therefore, we reverse Burnside's conviction on count 88.  As discussed below, reversal of this count will not affect Burnside's sentence or jail term, but the total amount of his special assessments will be reduced by fifty dollars.  *See United States v. Pepper*, 51 F.3d 469, 475 (5th Cir. 1995).

## *VIII.  Burnside's Sentence.*

Burnside argues that the district court clearly erred in determining the value of the laundered funds for sentencing purposes and in increasing his offense level based upon its determination that he knew that the laundered funds were the proceeds of drug activity.  Burnside suggests that the district court committed an ex post facto violation by sentencing him under the 1991 amendments to the Sentencing Guidelines.

Under the grouping provisions of the guidelines, Burnside's offense level was computed based upon his money laundering convictions (counts 83-86 and 89).[4]  The probation officer in-creased Burnside's base offense level of 23 by three on the ground that Burnside was aware that the laundered funds were derived from the sale of narcotics and by an additional four on the ground that the laundered funds exceeded $600,000.  The probation officer reported, based upon an analysis of Burnside's records of Guerra's 1987-91 income, that the total amount of funds laundered by

---

[4] Because Burnside's offense level was based upon the money laundering rather than the structuring convictions, our disposition of count 88 does not affect Burnside's overall sentence.  Burnside received concurrent terms of 151 months for money laundering (5 counts), 60 months for conspiracy (3 counts), and 36 months for transaction structuring offenses (6 counts besides count 88).

21

Burnside was $934,092. The probation officer documented numerous highly unorthodox transactions that Burnside completed for Guerra. Burnside objected in conclusional terms that he had not known that the funds were drug proceeds and that he had laundered only $178,000.

### A. Value of Laundered Funds.

At sentencing, counsel conceded that Burnside had laundered more than $178,000, but he argued without great specificity that the amount laundered was less than $600,000. The district court rejected his argument as follows:

> The offense conduct . . . exceeded $600,000 on the counts of conviction, and the related conduct was in the neighborhood of a million dollars, and I'm not going to consider even related conduct for which he was acquitted. But for sentencing purposes, even some of the legitimate things that were done for the Guerras could be considered in the magnitude of the offense because in the absence of some legitimate transactions, it's real hard to launder stuff sinceSSso you've got to set up legitimate things.

The district court adopted the PSR as proposed by the probation officer. As Burnside did not present any evidence to refute the probation officer's report that the laundered funds totaled $934,092, the court did not clearly err when it adopted the PSR's finding concerning the amount of funds laundered.

### B. Nature of Laundered Funds.

Burnside did not present any evidence to support his conclusional argument that he was unaware that the laundered funds were drug proceeds. The district court held that a preponderance

22

of the evidence supported a finding that Burnside knew the funds were derived from drugs rather than some other unlawful activity. Burnside's denial of knowledge of the nature of the funds fails to establish that the district court's determination is not plausible in light of the record as a whole. *See Bermea*, 30 F.3d at 1575.

## C. Ex Post Facto Argument.

Burnside was sentenced under the 1992 edition of the Sentencing Guidelines. As discussed above, his offense level was increased by three pursuant to U.S.S.G. § 2S1.1(b)(1), which imposes an increase if the defendant "knew or believed" that the laundered funds were the proceeds of certain illicit activities. Prior to November 1991, § 2S1.1(b)(1) provided for an increase in the offense level only if the defendant "knew" of the illicit source of the funds. *See United States v. Breque*, 964 F.2d 381, 389 (5th Cir. 1992), *cert. denied*, 507 U.S. 909 (1993). Burnside correctly points out that, because the offense conduct occurred before November 1991, the use of the amended version of § 2S1.1(b)(1) violates ex post facto principles. *See United States v. Domino*, 62 F.3d 716, 719-20 (5th Cir. 1995).

Because Burnside did not present his ex post facto argument to the district court, our review is for plain error. Under FED. R. CRIM. P. 52(b), we may correct forfeited errors only when the appellant shows the following factors: (1) There is an error (2) that is clear or obvious and (3) that affects his substantial rights. *United States v. Calverley*, 37 F.3d 160, 162-64 (5th Cir.

23

1994) (en banc) (citing *United States v. Olano*, 113 S. Ct. 1770 (1993)), *cert. denied*, 115 S. Ct. 1266 (1995).  If these factors are established, the decision to correct the forfeited error is within our sound discretion, and we will not exercise that discretion unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Olano*, 113 S. Ct. at 1778.

Parties are required to challenge errors in the district court.  When a defendant in a criminal case has forfeited an error by failing to object, we may remedy the error only in the most exceptional case.  *Calverley*, 37 F.3d at 162.  The Supreme Court has directed the courts of appeals to determine whether a case is exceptional by using a two-part analysis.  *Olano*, 113 S. Ct. at 1777-79.

First, the appellant has the burden to show that there is actually an error, that it is plain, and that it affects substantial rights.  *Id.* at 1777-78; *Rodriguez*, 15 F.3d at 414-15; FED. R. CRIM. P. 52(b).  Plain error is one that is "clear or obvious, and, at a minimum, contemplates an error which was clear under current law at the time of trial."  *Calverley*, 37 F.3d at 162-63 (internal quotation and citation omitted).  *See United States v. Dupaquier*, No. 95-30068, slip op. 1706, 1710-11 (5th Cir. Jan. 26, 1996).  "[I]n most cases, the affecting of substantial rights requires that the error be prejudicial; it must affect the outcome of the proceeding."  *Calverley*, 37 F.3d at 164.  We lack the authority to relieve an appellant of this burden.  *Olano*, 113

S. Ct. at 1781.

Second, the Supreme Court has directed that, even when the appellant carries his burden, "Rule 52(b) is permissive, not mandatory. If the forfeited error is `plain' and `affect[s] substantial rights,' the Court of Appeals has authority to order correction, but is not required to do so." *Olano*, 113 S. Ct. at 1778 (quoting rule 52(b)). As the Court stated in *Olano*,

> the standard that should guide the exercise of [this] remedial discretion under Rule 52(b) was articulated in *United States v. Atkinson*, 297 U.S. 157 . . . (1936). The Court of Appeals should correct a plain forfeited error affecting substantial rights if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

*Id.* at 1779 (quoting *Atkinson*, 297 U.S. at 160). Thus, our discretion to correct an error pursuant to rule 52(b) is narrow. *Rodriguez*, 15 F.3d at 416-17.

The error in this case is clear and obvious, but Burnside has not established that it affects his substantial rights. Although the probation officer cited the "knew or believed" language, the district court found that Burnside "reasonably [could] be concluded to have known" that the funds were derived from "drugs and not some other unlawful activity." Burnside's conclusional protestations aside, the facts cited in the PSR indicate that Burnside "knew" that Guerra was dealing drugs.

## IX.   Conclusion.

In summary, we AFFIRM as to Caputo and Maldonado. We AFFIRM Burnside's conviction except on count 88, as to which we REVERSE,

25

and we VACATE and REMAND Burnside's sentence for resentencing to reduce his special assessment by fifty dollars.